IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RAYMOND MATHIS,        )
AIS #140252,           )
                       )
            Plaintiff, )
                       )
        v.             )        CASE NO. 1:05-CV-1084-MHT
                       )                 [WO]
                       )
SHERIFF LAMAR GLOVER, et al.,  )
                       )
           Defendants. )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

In this 42 U.S.C. § 1983 action, Raymond Mathis ["Mathis"], a county inmate and

frequent litigant in this court, challenges the constitutionality of actions taken against him

during his incarceration at the Houston County Jail in the latter part of 2005. Specifically,

Mathis complains the defendants (i) failed to provide him adequate medical treatment for

an injury to his right hand, (ii) charged him a co-payment for costs associated with the

administration of medical treatment, (iii) denied him access to the courts, (iv) conspired to

violate his constitutional rights, and (v) acted in retaliation for his filing civil rights actions

regarding conditions at the Houston County Jail. Mathis names Lamar Glover, the former

sheriff of Houston County, Alabama, Dr. Sam Banner, nurse Darla Speigner and nurse

Valerie Hathaway, medical personnel employed by the Houston County Jail, William B.

McCarty, commander of operations at the jail, correctional officers Jackson, Turner, Davis,

Bonin and Skelton, and Nathan Mathis, a member of the Houston County Commission, as defendants in this cause of action.  Mathis seeks declaratory, injunctive and monetary relief for the alleged violations of his constitutional rights.

The jail and medical defendants filed a special report and supporting evidentiary materials addressing the plaintiff's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to treat this report as a motion for summary judgment.  *Order of May 10, 2006 - Court Doc. No. 19*.  Thus, this case is now pending on the aforementioned motion for summary judgment.  Upon consideration of such motion, the evidentiary materials filed in support thereof, and the plaintiff's response in opposition to this motion, the court concludes that the jail and medical defendants' motion for summary judgment is due to be granted.  The court further concludes that this case is due to be dismissed with prejudice as to all claims presented by the plaintiff.

## I. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir.2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c), as amended December 1, 2007, (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine

issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The jail and medical defendants have met their evidentiary burden.  Thus, the burden shifts to the plaintiff to establish, with evidence beyond the pleadings, that a genuine issue material to each of his claims for relief exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial.").  A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a

---

[1] Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, ---, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (citation

omitted). Consequently, to survive the properly supported motion for summary judgment

filed in this case, Mathis is required to produce "sufficient [favorable] evidence" which

would be admissible at trial supporting his claims of various constitutional violations.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence [on which the

nonmoving party relies] is merely colorable ... or is not significantly probative ... summary

judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the

opposing party's position will not suffice; there must be enough of a showing that the [trier

of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106

S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577

(11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise

insufficient to create a genuine issue of material fact and, therefore, do not suffice to

oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*,

276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir.

1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting

4

evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat

summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact.  *Beard*, 548 U.S. at ---, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate

6

this court's disregard of elementary principles of production and proof in a civil case.  In this case, Mathis has failed to demonstrate requisite genuine issues of material fact in order to preclude summary judgment.  *Matsushita*, *supra*.

## II.  DISCUSSION[2]

### A.  County Commissioner Nathan Mathis

The plaintiff names Nathan Mathis, a commissioner for Houston County, Alabama, as a defendant in this cause of action.   To the extent the plaintiff seeks to hold commissioner Nathan Mathis liable under 42 U.S.C. § 1983 for actions of the sheriff regarding the daily operation of the Houston County Jail or policies implemented by the sheriff regarding such operation, he is entitled to no relief.   "A local government may be held liable under § 1983 only for acts for which it is actually responsible, 'acts which the

---

[2]The pleadings indicate that the actions which form the basis of the instant complaint occurred both prior to and after the plaintiff's conviction for a felony offense, and, therefore, relate to incidents which happened during his status as a pretrial detainee and convicted felon.   The Fourteenth Amendment, rather than the Eighth Amendment, provides the appropriate standard for assessing whether conditions of confinement imposed upon/actions taken against a detainee are violative of the Constitution. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861 (1979); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (citations omitted) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.... However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096, 106 S.Ct. 1492 (1986) (For analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment.).   Thus, this court will rely on cases interpreting the Eighth Amendment's prohibition against cruel and unusual punishment, and not the Fourteenth Amendment's guarantee of due process, when addressing the plaintiff's claims for relief because the standard for violations of the Eighth Amendment apply to pretrial detainees through the Due Process Clause of the Fourteenth Amendment. *Tittle v. Jefferson County Commission*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing that "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

[local government] has officially sanctioned or ordered.' *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986) (*citing Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978))." *Turquitt v. Jefferson County*, 137 F.3d 1285, 1287 (11ᵗʰ Cir. 1998). Consequently, "local governments can never be liable under § 1983 for the acts of those whom the local government has no authority to control." *Id.* 1292. In deciding whether a county commission is liable under § 1983, "[a] court's task is to 'identify those officials or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'" *McMillian v. Monroe County*, 520 U.S. 781, 784-785, 117 S.Ct. 1734, 1736 (1997) (*quoting Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 2724, 105 L.Ed.2d 598 (1989)). State law is well settled that "an Alabama sheriff acts exclusively for the state rather than for the county in operating a county jail." *Turquitt*, 137 F.3d at 1288.[3]

As is clear from the foregoing, "Alabama sheriffs are not county policymakers in their daily management of county jails." *Turquitt*, 137 F.3d at 1292. "For § 1983 liability

---

[3]Under all facets of Alabama law, a county sheriff acts as a state officer "when supervising inmates and otherwise operating the county jails." *Turquitt*, 137 F.3d at 1289; *Parker v. Amerson*, 519 So.2d 442 (Ala. 1987) ("A sheriff is an executive officer of the State of Alabama" and as such "is not an employee of a county for the purposes of imposing liability on the county."); *Ala. Code* § 14-6-1 (a sheriff has "the legal custody and charge of the jail in his county and all prisoners committed thereto."); *King v. Colbert County*, 620 So.2d 623, 625 (Ala. 1993) (*Ala. Code* § 14-6-1 establishes that "the sheriff's authority over the jail is totally independent of the [county commission].)"

to attach to a county [and/or its commissioners], the policy at issue must have been made by a person who exercises final authority on behalf of the county with respect to that policy. *See McMillian*, 520 U.S. at [784-785], 117 S.Ct. at 1736. Alabama law, however, clearly demonstrates that sheriffs possess only state policymaking authority when running the day-to-day affairs of a jail. *See Turquitt*, 137 F.3d at 1291-92." *Vinson v. Clarke County*, 10 F.Supp.2d 1282, 1295-1296 (S.D. Ala. 1998). Moreover, a county commission and its individual members are entitled to absolute immunity under § 1983 for claims arising from the appropriation of funds for the maintenance of a county jail. *Woods v. Garner*, 132 F.3d 1417, 1420 (11th Cir. 1998). Thus, the plaintiff's claims against county commissioner Nathan Mathis with respect to claims related to the daily operation of the Houston County Jail are due to be dismissed in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (iii).[4]

## B. Absolute Immunity

To the extent Mathis sues the jail and medical defendants in their official capacities, they are immune from monetary damages. Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). Under all facets of Alabama law, a county sheriff, his jailers and medical staff act as state officers "when supervising inmates and otherwise operating the county

---

[4]The plaintiff's medical co-payment and conspiracy claims against the defendants, including county commissioner Nathan Mathis, are addressed *infra*. at pp. 20-21 and 24-25.

jails." *Turquitt v. Jefferson County, Alabama*, 137 F.3d 1285, 1289 (11th Cir. 1998); *see* Ala. Const. Art. V, § 112 (designates sheriff as member of State's executive department); *see also Parker v. Amerson*, 519 So.2d 442 (Ala. 1987) (county sheriff is executive officer of the State). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state officials entitled to Eleventh Amendment immunity when sued in their official capacities. Thus, the jail and medical defendants are entitled to absolute immunity from the plaintiff's claims for monetary damages asserted against them in their official capacities.

### C. Medical Treatment for Hand Injury - Deliberate Indifference

Mathis possesses an extensive criminal history including voluminous convictions before the state courts of Houston County, Alabama beginning in the 1980's and continuing until the present date. In March of 2005, Mathis entered the Houston County Jail on a

10

charge of third degree burglary and on an indicted offense for first degree receiving stolen property. *Defendants' Exhibit D - Court Doc. No. 18-16* at 1- 4. A grand jury returned an indictment against Mathis for the burglary offense on June 10, 2005. Mathis entered a guilty plea to receiving stolen property on November 16, 2005 and received a sentence of two (2) years imprisonment for this offense. The record further indicates that Mathis likewise entered a guilty plea to third degree burglary on March 29, 2006 and the trial court imposed a sentence of four (4) years imprisonment for this conviction.

Upon entry into the jail, Mathis voiced several health complaints, including a complaint of chronic back pain. Based on this complaint, medical personnel prescribed Ibuprofen. Tylenol was also available at all times from correctional officers upon request by the inmate. On June 30, 2005, Mathis engaged in a physical altercation with another inmate at which time Mathis suffered an injury to his right hand. *Medical Records of Raymond Mathis - Nurse's Notes of June 30, 2005 -- Court Doc. No. 18-8* at 4. Sgt. Reynolds advised the medical staff of this incident and nurse Laura Laguerra immediately proceeded to the jail's living area to examine the inmates involved in the altercation. *Id*. At this time, nurse Laguerra "noted [inmate] Mathis' [right] hand to be swollen - especially 5th digit & lateral side [of right] hand." *Id*. She placed Mathis on the medical clinic list for the following day, July 1, 2005, and "provided [him] ice ([with] salt) in Ziploc bag to soak his hand." *Id*.

Mathis reported to the infirmary for the scheduled appointment. At this time, nurses

11

Speigner and Hathaway examined Mathis regarding his complaints of an injured right hand and knot on his jaw. Speigner observed "[right] hand very swollen.... [No] discoloration, capillary refill good in all fingers. [No] deformity on [right] hand, pulse good. ⇓ ROM [due to] swelling & pain. [Mathis] shows no signs of numbness in hand or fingers. Feeling acknowledged when I raked ... nail across bottom (palm-side) of each finger & palm of hand. Small acorn sized-mobile, hard knot to [right] jawline, states tenderness when palpated [no] discoloration" to jaw. *Medical Records of Raymond Mathis - Sick Call Notes of July 1, 2005 -- Court Doc. No. 18-6* at 39. Speigner ordered Mathis transported to an outside medical faciltiy for an X-ray of his right hand and Hathaway ensured jail personnel followed this order. *Id.*; *Medical Records of Raymond Mathis - Infirmary Referral Form -- Court Doc. No. 18-8* at 18.

Jail personnel on this same day, in accordance with the order of the medical staff, transferred Mathis to the West Main Medical Center for performance of the ordered X-ray. *Medical Records of Raymond Mathis - Infirmary Referral Form -- Court Doc. No. 18-8* at 18. The X-ray revealed a fracture of Mathis' right "hand at [the] 5th metacarpal." *Medical Records of Raymond Mathis - Sick Call Notes of July 1, 2005 -- Court Doc. No. 18-6* at 37. After reviewing the result of the X-ray, Dr. Banner referred Mathis to Dr. Bruce Hall, an orthopedic surgeon at Southern Bone and Joint Specialists, for further evaluation and treatment. *Id.*; *Medical Records of Raymond Mathis - Infirmary Referral Form -- Court Doc. No. 18-8* at 17. Dr. Banner also prescribed Ultram and Tylenol to Mathis for pain

12

relief which the jail's medical staff dispensed to Mathis as prescribed. *Medical Records of Raymond Mathis - Sick Call Notes of July 1, 2005 -- Court Doc. No. 18-6* at 37. The medical records further demonstrate that Dr. Banner consistently renewed these prescriptions and also ordered Ibuprofen in an effort to address Mathis' continuing complaints of pain.

After his evaluation by Dr. Banner, jail officials immediately transported Mathis to Southern Bone and Joint Specialists for his appointment with the orthopedic surgeon. *Medical Records of Raymond Mathis - Infirmary Referral Form  -- Court Doc. No. 18-8* at 17. Dr. Hall examined Mathis and placed a cast on his right hand. Dr. Hall scheduled Mathis for a follow-up appointment on July 26, 2005. *Medical Records of Raymond Mathis - Infirmary Referral Form -- Court Doc. No. 18-11* at 9.

On July 18, 2005 during an evaluation by the jail medical personnel, Mathis "threaten[ed] to remove cast from [his] hand." *Medical Records of Raymond Mathis - Physician Orders of July 18, 2005 -- Court Doc. No. 18-6* at 33. Nurse Speigner therefore ordered that correctional officials "move [Mathis] from F-Pod to docket for observation." *Id.* The following day, Mathis advised nurse Laguerra that he was "going to take this thing (cast) off today...." *Jail Records of Raymond Mathis - July 19, 2005 Inmate Request Form -- Court Doc. No. 18-9* at 1. Nurse Laguerra consulted with the plaintiff regarding the necessity of the cast remaining in place and Mathis signed a statement agreeing to "leave my cast alone until my [July 26th] follow-up with the doctor." *Medical Records of*

*Raymond Mathis - July 21, 2005 Statement of Raymond Mathis -- Court Doc. No. 18-11* at 10. However, the following day, Mathis retracted this statement and signed another statement acknowledging "refus[al] to wear my cast/splint from this date on & I do hereby confirm/declare that I do <u>NOT</u> need or want to go to my scheduled [follow-up] appointment [with Dr. Hall]." *Medical Records of Raymond Mathis - July 22, 2005 Statement of Raymond Mathis -- Court Doc. No. 18-11* at 8. Mathis did, in fact, remove the cast from his hand on this date. Based on the foregoing, jail personnel notified Southern Bone and Joint Specialists of Mathis' decisions to remove his cast and not attend his follow-up appointment which prompted cancellation of such appointment by the free-world medical care provider. *Id*.

After removal of the cast, jail medical personnel wrapped Mathis' hand with an Ace bandage. In late August of 2005, Mathis complained of pain in his right hand and alleged his belief the "hand is broke 'again'...." *Medical Records of Raymond Mathis - Sick Call Notes of August 29, 2005 -- Court Doc. No. 18-6* at 28. Nurses Speigner and Hathaway examined Mathis with regard to his complaints at which time they observed "[no] swelling, [no] deformity" and noted nothing which indicates another break in the hand. *Id*. Speigner advised Mathis the condition of his hand warranted no further action due to the "fact of him refusing to wear [his] cast for duration needed for healing & refused follow-up appt. [with orthopedic specialist], he got angry & started talking about lockdown & about how he couldn't take lockdown anymore. I explained to him that all [inmates with] casts have to

14

go thru same procedure." *Id*. Medical personnel, nevertheless, continued to provide various medications in an effort to address Mathis' complaints of pain and provided him an Ace bandage for support of his hand.

Despite these protestations of a broken hand and associated pain, a correctional officer observed Mathis on September 10, 2005 "doing 25 close hand push-ups. This inmate did two (2) sets of these military style push-ups. Upon finishing these push-ups, ... I/M Mathis raised his right hand and waved.... On the previous day (09-09-05), I/M Mathis was seen by this [correctional officer] ... slapping and boxing (horseplaying) ... with two other inmates. I know this inmate by the numerous requests and grievances ... stating his hand might be broken and is in great pain. This inmate clearly had no pain in the last two days [as] he has demonstrated great agility and dexterity with the use of both hands while exercising and with the boxing stance and use of closed [fist] fight[] tactics...." *Jail Records of Raymond Mathis Houston County Jail Statement Form of Richard Gray, Sr. -- Court Doc. No. 18-11* at 21.

Mathis asserts that the jail and medical defendants failed to provide him adequate medical treatment for the injury to his hand. These defendants deny they acted with deliberate indifference to Mathis' medical condition, and, instead, maintain that they rendered appropriate treatment to Mathis for this injury. The evidentiary materials filed herein support the defendants' assertion as these documents establish that after Mathis suffered his hand injury the medical staff of the jail ordered an X-ray of Mathis' hand,

15

routinely examined Mathis, thoroughly evaluated his complaints, prescribed various medications, referred him to a free-world orthopedic surgeon for evaluation/treatment of his hand and provided continuous treatment in accordance with their professional judgment and that of the free-world physician. *Medical Records of Raymond Mathis - Court Doc. No. 18-5 through Court Doc. No. 18 -11*; *Defendants' Exhibit 3 (Affidavit of Darla Jane Speigner) - Court Doc. No. 18-4 at 2-3.*

To prevail on a constitutional claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that those responsible for providing the treatment acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, correctional and medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989). When seeking relief based on deliberate indifference of responsible officials, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner).

Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, ... the Supreme Court has ... emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).  Moreover, "whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (medical personnel do not violate the Constitution simply because their opinions concerning medical treatment conflict with that of the inmate-patient).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2001).  Thus, for Mathis to avoid summary judgment on his deliberate indifference claim, he is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579,

1582 (11th Cir. 1995).

Under the circumstances of this case, it is clear that the course of treatment undertaken by the defendants was neither grossly incompetent nor inadequate. It is undisputed that Mathis received continuous and necessary medical treatment for the injury to this right hand in accordance with the professional judgment of the jail medical staff and his free-world physician. His assertions regarding a mere desire for a different mode of medical treatment and/or the challenges to the chosen course of treatment do not, under the facts of this case, amount to deliberate indifference. *Harris*, 941 F.2d at 1505; *Hamm*, 774 F.2d at 1575; *Garvin*, 236 F.3d at 898; *Franklin*, 662 F.2d at 1344. Mathis has failed to present any evidence which indicates the defendants knew that the manner in which they treated his injured hand created a substantial risk to his health and that with this knowledge consciously disregarded such risk. Thus, the record is devoid of evidence, significantly probative or otherwise, showing that the defendants acted with deliberate indifference to Mathis' hand injury. Summary judgment is therefore due to be granted in favor of the defendants on this claim.

### D. Co-Payment for Medical Treatment

Mathis complains the defendants violated his constitutional rights by charging a co-payment for medical treatment and deducting any such payment from funds available in his jail account. This claim entitles the plaintiff to no relief.

An essential element of a 42 U.S.C. § 1983 action is that the conduct complained

19

of deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981). The charge of a medical co-payment does not violate the Constitution. The mere fact that an inmate is assessed a co-payment for medical treatment does not in any way deprive him of a protected right, privilege or immunity. *Shapley v. Nevada Board of State Prison Commissioners*, 766 F.2d 404, 408 (9th Cir. 1985) (imposition of fee for medical treatment provided to an inmate does not amount to a constitutional violation); *Bester v. Dr. Wilson*, 2000 WL 1367984 at *8 (S.D. Ala. August 18, 2000) ("[T]he charging of a fee to prisoners for medical treatment from their funds has been held to be constitutional when challenged on several due process and Eighth Amendment grounds.").

Mathis does not allege that medical or jail personnel denied him treatment because of his inability to pay the fee; rather, the medical records and other evidentiary materials demonstrate Mathis received medical treatment regardless of his ability to provide a co-payment for such treatment. Thus, Mathis has failed to allege a violation of his constitutional rights. In light of the foregoing, it is clear that this claim lacks an arguable basis in law and is subject to dismissal as frivolous in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i). *Neitzke v. Williams*, 490 U.S. 319 (1989).[5]

## E. Access to Court

---

[5]Although *Neitzke* interpreted 28 U.S.C. § 1915(d), the predecessor to § 1915(e)(2), the analysis contained therein remains applicable to the directives contained in the present statute.

Mathis complains the defendants denied him access to the court by failing to provide adequate supplies, i.e., pens, paper and books, and time in the law library necessary to the litigation of this matter. The law directs that incarcerated persons are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified and limited the right to assistance set forth in *Bounds*. Specifically, the Court held that "an inmate alleging a violation of *Bounds* must show actual injury" arising from the alleged inadequacies in the law library, legal assistance program or access provided by officials. *Lewis*, 518 U.S. at 349. In identifying the particular right protected by *Bounds*, the Court explained that "*Bounds* established no ... right [to a law library or to legal assistance]. The right that *Bounds* acknowledged was the (already well-established) right of ***access to the courts***.... [P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id*. at 350-351 (emphasis in original) (citations omitted). The Court further opined *Bounds* did not require "that the State ... enable the prisoner to ***discover grievances***, and to ***litigate effectively*** once in court.... To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is [not something] ... the Constitution requires." *Id*. at 354 (emphasis in original).

The Court similarly rejected the argument that the mere claim of a systemic defect, without a showing of actual injury, presented a claim sufficient to confer standing. *Id*. at 349. Moreover, *Lewis* emphasized that a *Bounds* violation is related to the lack of an inmate's capability to present claims. 518 U.S. at 356. "*Bounds*, which as we have said guarantees no particular methodology but rather the conferral of a capability -- the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts. When any inmate ... shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided, he demonstrates" the requisite actual injury. *Lewis*, 518 U.S. at 356. Finally, the Court discerned that the injury requirement is satisfied only when an inmate has been denied "a reasonably adequate opportunity to file nonfrivolous legal claims challenging [his] convictions or conditions of confinement.... [I]t is that capability, rather than the capability of turning pages in a law library, that is the touchstone." *Id*. at 356-357. "[T]he Constitution does not require that prisoners ... be able to conduct generalized research, but only that they be able to present their grievances to the courts - a more limited capability that can be produced by a much more limited degree of legal assistance." *Id*. at 360. The Court admonished that federal courts should allow prison officials to determine the best method of ensuring that inmates are provided a reasonably adequate opportunity to present their nonfrivolous claims of constitutional violations to the courts. *Id*. at 356. A federal

district court must "'scrupulously respect[] the limits on [its] role,' by 'not ... thrust[ing] itself into prison administration' and instead permitting '[p]rison administrators [to] exercis[e] wide discretion within the bounds of constitutional requirements.' [*Bounds*, 430] U.S. at 832-833, 97 S.Ct. at 1500." *Id.* at 363.

Mathis has utterly and completely failed to come forward with any evidence that the actions about which he complains deprived him of the ***capability*** of pursing claims in this or any other court. Throughout the proceedings in this case and several other cases filed in this court, Mathis has repeatedly demonstrated that he is both proficient and prolific at presenting and arguing the claims of his choice to this or any other court. Nothing before the court indicates that the actions about which Mathis complains improperly impeded or adversely affected his efforts to pursue nonfrivolous legal claims. Thus, Mathis does not establish he suffered the requisite injury, *Lewis*, 518 U.S. at 356, and the defendants are therefore entitled to summary judgment on the access to court claim. *Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).

### F. The Conspiracy Claim

Mathis alleges the defendants engaged in a conspiracy to effectuate violations of his constitutional rights. "Conspiring to violate another person's constitutional rights violates section 1983. *Dennis v. Sparks,* 449 U.S. 24, 27 101 S.Ct. 183, 186 (1980); *Strength v. Hubert,* 854 F.2d 421, 425 (11th Cir.1988), *overruled in part on other grounds by Whiting v. Traylor,* 85 F.3d 581, 584 n.4 (11th Cir.1996)." *Rowe v. City of Fort Lauderdale*, 279

F.3d 1271, 1283 (11th 2002).  "To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff 'must show that the parties "reached an understanding" to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy.' *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir.1990), *cert. denied,* 500 U.S. 932, 111 S.Ct. 2053, 114 L.Ed.2d 459 (1991).... [T]he linchpin for conspiracy is agreement ..." *Bailey v. Board of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 58 (1992).  In order for a plaintiff "to establish the 'understanding' or 'willful participation' required to show a conspiracy, ... [he] must [produce] some evidence of agreement between the defendants....  For a conspiracy claim to survive a motion for summary judgment '[a] mere "scintilla" of evidence ... will not suffice; there must be enough of a showing that the jury could reasonably find for that party.' *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990)." *Rowe*, 279 F.3d at 1283-1284.  Merely "stringing together" adverse acts of individuals is insufficient to demonstrate the existence of a conspiracy.  *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992).

The evidentiary materials submitted by the jail and medical defendants rebut Mathis' self-serving, conclusory allegation that they entered into a conspiracy among themselves or with anyone else to deprive him of his constitutional rights.  Specifically, the aforementioned defendants deny they acted in concert or otherwise to violate Mathis' constitutional rights.  The court has carefully reviewed the pleadings filed by the plaintiff.  Mathis fails to proffer any evidence that the named defendants "reached an understanding"

24

to violate his rights or committed an "actionable wrong to support the [alleged] conspiracy." *Bailey*, 956 F.2d at 1122; *Bendiburg*, 909 F.2d at 468. At best, Mathis' makes the bald, speculative assertion that the defendants conspired against him. Such bare statement, however, does not constitute evidence of a conspiracy between the defendants. *Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984). Thus, there no evidence to support Mathis' conspiracy theory, and summary judgment is due to be granted in favor of the defendants on this claim. *Bailey*, 956 F.2d at 1122.

### G. Retaliation

Mathis makes the conclusory and speculative assertion that the jail and medical defendants denied him medical treatment and access to the court in retaliation for his filing civil rights actions against them. The defendants deny this allegation. Moreover, the evidentiary materials before the court further indicate that Mathis' legal activities did not have any impact on the medical treatment provided to him nor impinge on his seemingly interminable access to the courts.

To present a retaliation claim cognizable under § 1983, a prisoner must demonstrate that (i) he engaged in a constitutionally protected activity, (ii) he suffered adverse treatment simultaneously with or subsequent to such activity, and (iii) a causal connection existed between the protected activity and the adverse action. *Donnellon v. Fruehauf Corporation*, 794 F.2d 598, 600-601 (11th Cir. 1986); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2nd Cir. 2004); *Morales v. Mackalm*, 278 F.3d

126, 131 (2nd Cir. 2002); *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Proper assertion of a claim for retaliation requires that a prisoner allege that correctional officials intended to retaliate for his exercise of a right protected under the Constitution and, but for the retaliatory motive, the adverse act complained of would not have occurred. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied sub nom Palermo v. Woods*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996). However, it is essential that federal courts "carefully scrutinize retaliation claims" brought by prisoners challenging actions of correctional personnel. *Woods*, 60 F.3d at 1166. "[C]ourts must approach prisoner claims of retaliation with skepticism and particular care. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983). This is [necessary because prisoners'] ... claims of retaliation are ... easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

　　　An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by a preponderance of the evidence, which once established raises a presumption that prison officials retaliated against the inmate. *Texas Department of Community Affairs*

*v. Burdine*, 450 U.S. 248 (1981).  Merely alleging the ultimate fact of retaliation, however, is insufficient.  *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods*, 60 F.3d at 1166.  Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to establishing retaliation.  *Morales*, 278 F.3d at 131; *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (Because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations.").  If an inmate establishes a prima facie case, the burden then shifts to prison officials to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the prison official retaliated against the inmate.  This may be done by the prison official articulating a legitimate, non-retaliatory reason for the adverse decision or action, which is clear, reasonably specific and worthy of credence.  The prison official has a burden of production, not of persuasion, and thus does not have to persuade a court that he or she actually was motivated by the reason advanced.  *Burdine, supra.*  Once the prison official satisfies this burden of production, the inmate then has the burden of persuading the court by sufficient and admissible evidence that the proffered reason for the adverse decision is a pretext for retaliation.  *Id.*

Mathis contends the jail and medical defendants retaliated against him for filing this and other lawsuits challenging conditions at the Houston County Jail, thus satisfying his burden of establishing that he had engaged in a protected activity.  *Donnellon*, 794 F.2d at 600-601.  However, these defendants have demonstrated through affidavits and other

relevant admissible evidence that no adverse actions occurred due to Mathis filing civil actions. Mathis offers only his conclusory allegation of ultimate fact that jail and medical personnel retaliated against him. As this court must "carefully scrutinize retaliation claims" presented by prisoners, *Woods*, 60 F.3d at 1166, and evaluate such claims "with skepticism and particular care[,]" *Dawes*, 239 F.3d at 491, it is clear that Mathis' mere conclusory allegation is insufficient to establish retaliation by the defendants. Consequently, the defendants are entitled to summary judgment on the retaliation claim as Mathis fails to establish a causal relationship between his protected activity and any adverse action taken against him. *Farrow*, 320 F.3d at 1249.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. To the extent the plaintiff presents claims against county commissioner Nathan Mathis regarding the daily operation of the Houston County Jail, these claims be dismissed pursuant to the directives of 28 U.S.C. § 1915(e)(2)(B)(i) and (iii).

2. The motion for summary judgment filed by the jail and medical defendants be GRANTED.

3. Judgment be GRANTED in favor of all defendants on each of the plaintiff's claims for relief.

4. This case be dismissed with prejudice.

5. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before August 12, 2008 the parties may file objections to the Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 30th day of July, 2008.


/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE